**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3172-14T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent/
    Cross-Appellant,

v.

BRIAN L. BRADY,

    Defendant-Appellant/
    Cross-Respondent.

_____

        Argued December 20, 2017 — Decided August 31, 2018

        Before Judges Fuentes, Koblitz and Manahan.

        On appeal from Superior Court of New Jersey,
        Law Division, Mercer County, Indictment No.
        12-02-0029.

        Mario A. Iavicoli argued the cause for
        appellant/cross-respondent.

        Sarah Lichter, Deputy Attorney General, argued
        the cause for respondent/cross-appellant
        (Christopher S. Porrino, Attorney General,
        attorney; Sarah Lichter, of counsel and on the
        brief).

PER CURIAM

Defendant Brian Brady was a former captain of the Human Services Police (HSP). On February 17, 2012, a State Grand Jury returned an indictment against defendant charging him with three counts of second degree official misconduct, N.J.S.A. 2C:30-2, second degree pattern of official misconduct, N.J.S.A. 2C:30-7, third degree theft by deception, N.J.S.A. 2C:20-4, two counts of third degree tampering with public records or information, N.J.S.A. 2C:28-7(a)(1), and second degree as well as third degree computer theft, N.J.S.A. 2C:20-25(a), N.J.S.A. 2C:20-25(e), and N.J.S.A. 2C:20-25(g).

Defendant waived his constitutional right to a jury trial[1] and was tried before a Superior Court Judge over twenty-five days beginning on May 9, 2014, and ending on July 22, 2014. The court acquitted defendant of seven out of the nine counts in the indictment. The judge found defendant guilty of one count of second degree official misconduct and second degree computer theft. On November 10, 2014, the judge denied defendant's motion for judgment of acquittal notwithstanding the verdict.

---

[1] Rule 1:8-1(a) provides, in pertinent part: "Criminal actions required to be tried by a jury shall be so tried unless the defendant, in writing and with the approval of the court, after notice to the prosecuting attorney and an opportunity to be heard, waives a jury trial."

On March 6, 2015, the judge conducted a sentencing hearing in which he downgraded both second degree convictions to third degree offenses for sentencing purposes, and imposed a one-year term of unsupervised probation on each offense, to run concurrent to each other, and imposed the mandatory statutory financial penalties. The judge also ordered the forfeiture of defendant's public office and pension. The State appeals arguing the noncustodial sentence imposed by the judge violates the minimum mandatory sentence required under 2C:20-25(h) for second degree computer theft where the victim is a government agency, and the mandatory minimum sentence required under N.J.S.A. 2C:43-6.5 for second degree official misconduct.

Defendant filed a cross-appeal arguing the State failed to prove beyond a reasonable doubt that he committed these computer related crimes. Defendant also argues he established, by clear and convincing evidence, the affirmative defense codified in N.J.S.A. 2C:20-33. In response to the State's appeal, defendant argues the sentence imposed by the trial judge was valid because he was actually convicted of two third degree offenses.

On the State's direct appeal, we vacate the sentence and remand the matter for resentencing. The imposition of two concurrent probationary terms for these two specific second degree offenses constitutes an illegal sentence because it violates the

mandatory minimum terms of imprisonment required under 2C:20-25(h) and N.J.S.A. 2C:43-6.5. On defendant's cross-appeal, we conclude the State proved these two second degree crimes beyond a reasonable doubt.

We limit our factual recitation to the part of the record that relates to defendant's conviction for second degree official misconduct and second degree computer theft.

I

In December 2007, defendant, as Captain of the HSP, was "responsible for the day-to-day operation of the law enforcement entity for the Department of Human Services." Denis James Kuchta, a retired Lieutenant of the HSP, was assigned to the Department of Youth and Family Services (DYFS).[2] In this official capacity, Kuchta was authorized to access certain HSP databases that included individuals' personal information and criminal records. Kuchta accessed those databases to complete DYFS investigations, to locate missing persons, and to determine suitability for foster care or emergency care. Defendant outranked Kuchta.

On December 17, 2007, defendant sent Kuchta an email requesting that Kuchta access the HSP data base to check on a person named Lioubov Plotnikova. Defendant provided Kuchta with

_____

[2] Now the Division of Child Protection and Permanency.

Plotnikova's home address, vehicle information, license plate number, and her health aid state license number. Kuchta followed defendant's instructions[3] and ran a search on Plotnikova in the HSP data base. He did not ask defendant to explain or identify the purpose of this computer search.

Imelda Richinsin was a Senior Communication Operator with the HSP. She worked as a dispatcher and was authorized to access restricted government databases such as the National Criminal Information System (NCIC), the Administrative Office of the Courts (AOC) Tele, a data base used by the court system, the Department of Motor Vehicles (DMV),[4] and the Criminal Justice Information System (CJIS). Richinsin testified that besides her, the dispatchers and Sergeant Baez were the only other people in the HSP to have access to the CJIC and NCIC databases.

On June 19, 2008, defendant called Richinsin and asked her "to run lookups" in the HSP data base for a list of names that he was to email to her at a later time. Defendant requested Richinsin to look "specifically" for "warrants" and "DUIs." It was customary in the HSP to record all telephone calls with Communication

---

[3] Kuchta testified at trial that for most of his career at the HSP, defendant was "one rank above [him]."

[4] Now the Motor Vehicle Commission (MVC).

Operators.  A recording of the telephone conversation between defendant and Richinsin was played for the trial judge.

Later that day, defendant emailed Richinsin a list of names and personal information of players and three coaches of a minor league baseball team called the Sussex Skyhawks (Skyhawks). Richinsin testified that she did not ask defendant about the purpose for these computer searches.  At the time, she thought the subjects of the search "were going to be police officers disbursing to different stations."  In the audio recording of defendant's conversation with Richinsin, defendant tells her: "all these are actually out of state.  They are mostly Florida, California, Pennsylvania I guess, or something like that.  <u>I don't know if these people are going to a facility or what</u>."  (Emphasis added). The prosecutor asked Richinsin what the word "facility" meant to her, and she responded: "Oh well, like Ancora, Greystone or either they could have [gone] into a DYFS station, too."  Stated differently, Richinsin thought defendant was asking her to perform background searches on HSP police officers stationed at various DHS facilities.

Richinsin carried out her assignment as defendant instructed and ran searches in NCIC, the DMV, and AOC Tele for all of these individuals.  She told defendant the results of the searches in three subsequent phone calls and one email.  In one of the phone

calls, Richinsin told defendant: "Nothing came up on any of them." In her email to defendant, Richinsin stated: "all of the lookups were negative with the exception of three, because I needed the date of birth."

According to defendant, he had a friendly relationship with Hal Lanier, the general manager of the Skyhawks, and Brooks Carey, the pitching coach of the team. He authenticated the email he sent to Richinsin that listed the names of the Skyhawks players and coaches. He ordered the HSP staff to search these confidential government databases in response to a request from Brooks Carey and Hal Lanier. As defendant conceded:

> A. Well, prior to obtaining this information I was approached by Brooks Carey and Hal Lanier and asked if it would be possible to see if any of the players had any active warrants or multiple DUIs which would prevent them from entering from the United States into Canada. They explained to me that this has been done in the past with every team that they've been affiliated with and that this was for them a normal procedure. And that if players were prevented from entering, they would be detained at the border and they had made this request. I told them I would get back to them when they initially asked about it.
>
> Q. What was the request that they made?
>
> A. That the players and themselves just be checked for anything active that would prevent them from entering into Canada from the United States.

Defendant eventually contacted Carey and Lanier and told them he needed "the individuals' names, Social Security number[s] and date[s] of birth."

The evidence at trial is undisputed on the following facts: (1) defendant admitted he requested Richinsin to run searches on the names of baseball players who had no connection to the HSP; (2) defendant admitted that he misrepresented the nature of the computer data search when he told Richinsin that these were names of "employees that were going to be hired;" and (3) defendant admitted that he directed Kuchta to run a search on the HPS data base for Plotnikova, a health care worker whom defendant's brother was considering hiring to care for their mother.

## II

In the cross-appeal, defendant raises the following specific arguments:

> POINT I
>
> BRIAN BRADY DID NOT COMMIT A COMPUTER RELATED CRIME IN COUNT 8 UNDER N.J.S.A. 2C:20-25(a) or 2C:20-25(e) SINCE BRADY WAS NOT A HACKER BUT WAS AN INSIDER EMPLOYEE POLICE OFFICER WHO DID NOT ACCESS THE COMPUTER SYSTEM'S "WITHOUT AUTHORIZATION" OR "IN EXCESS OF AUTHORIZATION," AS REQUIRED BY N.J.S.A. 2C:20-25(a) and 2C:20-25(e) AS AN ELEMENT OF THE CRIME, AND DID NOT COMMIT OFFICIAL MISCONDUCT IN COUNT 3. SAID ANOTHER WAY, BRADY HAD PERMISSION TO ACCESS THE COMPUTER SYSTEM [AND] THERFORE BRADY DID NOT COMMIT A COMPUTER RELATED CRIME. AND SINCE A CONVICTION OF A

COMPUTER RELATED CRIME WAS THE PREDICATE FOR THE CONVICTION OF OFFICIAL MISCONDUCT IN COUNT 3 [. . .] THIS COURT SHOULD REVERSE AND DISMISS BOTH CONVICTIONS.

POINT 2

AS FURTHER EVIDENCE THAT THE CONVICTIONS SHOULD BE DISMISSED AS PER N.J.S.A. 2C:20-33[,] THE VALUE OF THE COMPUTER ACTIVITY WAS TRIVIAL, THAT IS, IT WAS CLEARLY AND CONVINCINGLY NOT MORE THAN $1,000 IN RETAIL VALUE AND THUS, NO CRIME WAS COMMITTED.

POINT 3

ASSUMING THIS COURT DOES NOT REVERSE AND DISMISS THE CONVICTIONS THE TRIAL JUDGE DID NOT COMMIT ERROR IN SENTENCING THE DEFENDANT TO PROBATION.

    A. BRADY WAS CONVICTED OF VIOLATING N.J.S.A. 2C:30-2 UNDER COUNT 3.

    B. BRADY WAS CONVICTED UNDER COUNT 8 OF VIOLATING N.J.S.A. 2C:20-25(a) WHICH IS A CRIME OF THIRD DEGREE AND NOT N.J.S.A. 2C:20-25(e).

We reject these arguments and affirm. N.J.S.A. 2C:20-25(a)

provides:

> A person is guilty of computer criminal activity if the person purposely or knowingly and without authorization, or in excess of authorization:
>
> a. Accesses any data, data base, computer storage medium, computer program, computer software, computer equipment, computer, computer system or computer network . . . .

Defendant argues he cannot be held criminally responsible under the plain reading of N.J.S.A. 2C:20-25(a) because he had authorization to access the computer databases at issue here. We disagree. Defendant's "authorization" to access these law enforcement databases, whether directly or through a subordinate employee adhering to his instructions, was expressly related to his duties and authority as a Captain in the HSP. He was not at liberty to access this highly sensitive data to advance his personal interest, including performing a "favor" for two men with whom he appeared to have had a social relationship, or to investigate the background of a person he and his brother planned to hire to care for their mother. The Supreme Court has emphasized:

> As a general rule, when the language of a statute is clear on its face, the sole function of the courts is to enforce it according to its terms. Nevertheless, we also have stressed that where a literal interpretation would create a manifestly absurd result, contrary to public policy, the spirit of the law should control.
>
> [Hubbard v. Reed, 168 N.J. 387, 392 (2001) (citations omitted).]

Defendant admitted he misrepresented his true intent when he directed a subordinate to conduct a comprehensive search of law enforcement databases for purely personal purposes. Such a manifest abuse of authority to access confidential computerized

information falls well within the scope of the statute's reach. Defendant's concealment of his true purpose when he ordered subordinates to conduct these computer searches revealed, beyond a reasonable doubt, that he acted with the requisite "purposely or knowingly" state of mind.

Defendant also argues that pursuant to N.J.S.A. 2C:20-33, he did not commit a computer related crime under N.J.S.A. 2C:20-25(e) because the value of the two accesses to the computer system amounted to less than $1000 in retail value. Defendant contends that information about the criminal records can be accessed on the internet for a nominal cost; therefore, the retail value of the information is "way, way less than [$1000]." Defendant characterized his actions as a "trivial, de minimis activity."

The State argues defendant is procedurally barred from raising N.J.S.A. 2C:20-33 as an affirmative defense because he did not raise the issue before trial. The State specifically cites Rule 3:10-2(c), which provides:

> The defense of double jeopardy and all other defenses and objections based on defects in the institution of the prosecution or in the indictment or accusation, except as otherwise provided by [Rule] 3:10-2(d) (defenses which may be raised only before or after trial) and [Rule] 3:10-2(e) (lack of jurisdiction), must be raised by motion before trial. Failure to so present any such defense constitutes a waiver thereof, but the court for good cause shown may grant relief from the waiver.

[<u>R.</u> 3:10-2(c) (emphasis added).]

Defendant's affirmative defense under N.J.S.A. 2C:20-33 is predicated on the value of the information he criminally accessed. A general amorphous claim that this highly sensitive, confidential data can be acquired on the internet for a nominal cost that is less than $1000 is clearly not competent evidence. Defendant's affirmative defense had to be factually supported at trial by clear and convincing evidence. It cannot be raised for the first time on appeal. The record developed at trial also makes it impossible for this court to ascertain whether this type of oversight by defense counsel should be reviewed on the plain error standard. <u>R.</u> 2:10-2. Defendant may raise this issue in a post-conviction relief petition based on a claim of ineffective assistance of counsel. In this petition, defendant will be able to present evidence that lies outside the trial record. <u>See</u> <u>State v. Preciose</u>, 129 N.J. 451, 460 (1992). We thus discern no legal basis to disturb defendant's conviction.

## III

## <u>State's Appeal</u>

We turn now to the State's direct appeal challenging the noncustodial, probationary sentence imposed by the trial court. The trial judge, sitting as the trier of fact, found defendant guilty of second degree official misconduct. Both N.J.S.A. 2C:20-

25(h) and N.J.S.A. 2C:43-6.5 required the trial court to impose a mandatory minimum sentence of imprisonment. We start by quoting N.J.S.A. 2C:20-25(h) directly:

> Every sentence imposed upon a conviction pursuant to this section shall, if the victim is a government agency, include a period of imprisonment. The period of imprisonment shall include a minimum term of one-third to one-half of the sentence imposed, during which term the defendant shall not be eligible for parole. The victim shall be deemed to be a government agency if a computer, computer network, computer storage medium, computer system, computer equipment, computer program, computer software, computer data or data base that is a subject of the crime is owned, operated or maintained by or on behalf of a governmental agency or unit of State or local government or a public authority. The defendant shall be strictly liable under this subsection and it shall not be a defense that the defendant did not know or intend that the victim was a government agency, or that the defendant intended that there be other victims of the crime.
>
> [Ibid. (emphasis added).]

N.J.S.A. 2C:43-6.5 provides, in relevant part:

> [A] person who serves or has served as a public officer or employee under the government of this State, or any political subdivision thereof, who is convicted of a crime that involves or touches such office or employment . . . shall be sentenced to a mandatory minimum term of imprisonment without eligibility for parole as follows . . . for a crime of the second degree, five years . . . As used in this subsection, "a crime that involves or touches such office or employment" means that the crime was related directly to the person's

performance in, or circumstances flowing from, the specific public office or employment held by the person.

[Ibid. (emphasis added).]

A second degree crime carries a term of imprisonment between five to ten years. N.J.S.A. 2C:43-6(a)(2). A second degree crime carries a presumption of imprisonment, which can only be overcome if "having regard to the character and condition of the defendant, it is of the opinion that his imprisonment would be a serious injustice which overrides the need to deter such conduct by others." N.J.S.A. 2C:44-1(d). The Supreme Court provided the guidance needed in determining whether the record supports overcoming the presumption of imprisonment:

> [W]here the court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands, the court may sentence a person convicted of a crime of the first- or second-degree within the sentencing ranges of crimes one degree lower. N.J.S.A. 2C:44-[1(f)(2)]. The presumption of imprisonment for first- and second-degree crimes, however, comes into play regardless [of] whether a defendant has led a crime-free or blameless life.
>
>         . . . .
>
> The presumption of imprisonment is not dispelled merely because the trial court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and the interests of justice justify

downgrading a first- or second-degree offense pursuant to N.J.S.A. 2C:44-[1(f)(2)].

[State v. Evers, 175 N.J. 355, 388 (2003) (alteration in original) (emphasis added).]

In Evers, Justice Albin also provided excellent guidance to trial judges on how to address the so-called idiosyncratic defendant:

In deciding whether the "character and condition" of a defendant meets the "serious injustice" standard, a trial court should determine whether there is clear and convincing evidence that there are relevant mitigating factors present to an extraordinary degree and, if so, whether cumulatively, they so greatly exceed any aggravating factors that imprisonment would constitute a serious injustice overriding the need for deterrence. We do not suggest that every mitigating factor will bear the same relevance and weight in assessing the character and condition of the defendant; it is the quality of the factor or factors and their uniqueness in the particular setting that matters.

[Id. at 393-394 (emphasis added).]

In State v. Nance, the Court reaffirmed the principles articulated in Evers: "The 'serious injustice' exception to the presumption of imprisonment applies only in 'truly extraordinary and unanticipated circumstances,' where the 'human cost' of punishing a particular defendant to deter others from committing his offense would be 'too great[.]'" State v. Nance, 228 N.J. 378, 395 (2017) (first quoting State v. Jabbour, 118 N.J. 1, 7

(1990) and then quoting <u>Evers</u>, 175 N.J. at 389)); <u>see also</u> <u>State v. Jarbath</u>, 114 N.J. 394 (1989).

Here, the judge found aggravating factor four applied: "A lesser sentence will depreciate the seriousness of the defendant's offense because it involved a breach of the public trust . . . or the defendant took advantage of a position of trust or confidence to commit the offense . . . ." N.J.S.A. 2C:44-1(a)(4). The judge also found aggravating factor nine applied: "The need for deterring the defendant and others from violating the law . . . ." N.J.S.A. 2C:44-1(a)(9). With respect to mitigating factors, the judge found the following applied: N.J.S.A. 2C:44-1(b)(1), "defendant's conduct neither caused nor threatened serious harm;" N.J.S.A. 2C:44-1(b)(2), "defendant did not contemplate that his conduct would cause or threaten serious harm;" N.J.S.A. 2C:44-1(b)(7), no history of prior delinquency of criminal activity; N.J.S.A. 2C:44-1(b)(8), defendant's conduct was the result of activities that are unlikely to reoccur; N.J.S.A. 2C:44-1(b)(9), defendant's character and attitude indicates he is unlikely to commit another offense; and N.J.S.A. 2C:44-1(b)(10), that defendant is likely to respond affirmatively to probationary treatment.

The record contains a large number of letters attesting to defendant's character. The judge also noted that the official

misconduct statute provides a mechanism for overcoming the minimum mandatory terms of imprisonment:

> If the court finds by clear and convincing evidence that extraordinary circumstances exist such that imposition of a mandatory minimum term would be a serious injustice which overrides the need to deter such conduct in others, the court may waive or reduce the mandatory minimum term of imprisonment required by subsection a. of this section. In making any such finding, <u>the court must state with specificity its reasons for waiving or reducing the mandatory minimum sentence that would otherwise apply</u>.
>
> [N.J.S.A. 2C:43-6.5(c)(2) (emphasis added).]

After reviewing the numerous letters of support for defendant, the judge found:

> We know that there's a very narrow window [of] opportunity for escaping incarceration for [the] official misconduct offenses such as [what] we're talking about, and only in the rarest of cases. They talk about the idiosyncratic cases, unique cases, and those have been talked about.
>
>     . . . .
>
> In my mind, this is such a case. I cannot impose a prison term on the official misconduct charge on defendant Brady. I believe that he is, for all the reasons that have been expressed on the record that unique person. If I haven't seen this in some 50 years, that's pretty rare. I've seen an awful, awful, awful, lot of stuff, but I think, as I mentioned before, he is absolutely the real deal, and I base my decision-making on those sort of three pillars. The one . . . situation that he found himself in. The

impossible situation. The dysfunctional Human Service Police Department with a captain who refused to do any work for eight years and thrust the burden on Captain Brady, along with others. The lack of leadership. The lack of anyone to report to to get counsel from was totally missing and inexplicably nothing was done about it other than to give him his paycheck and an office for eight years. That's important.

The judge's findings do not address or relate to the standard in N.J.S.A. 2C:43-6.5(c)(2) or the factors the Court articulated in Evers. The judge's analysis with respect to the mandatory minimum sentence provision in N.J.S.A. 2C:20-25(h) is equally flawed. There is no factual or legal support for the imposition of a one-year unsupervised probationary sentence. Defendant's conduct exhibited an unabashed indifference to the high ranking law enforcement position he held. He misused the power of his public office for petty personal matters, and embroiled unsuspecting subordinates in his misdeeds. This court has noted:

> The need for dispassionate, evenhanded conduct is most acute in the sentencing phase of a criminal trial. For it is in this critical phase of the criminal process that the judge's role changes, from an arbitrator of legal disputes that arise in the course of the trial, to the dispenser of society's justice. In this role, the judge must act in a manner that reassures all affected - defendant and his family, the victims and their families, and society at large - that he or she will be guided exclusively by the factors established by law and not by the judge's personal code of conduct.

18

[State v. Tindell, 417 N.J. Super. 530, 571 (App. Div. 2011).]

Here, the sentence imposed by the trial judge is not guided by these principles and is not grounded in the Criminal Code and the decision of the Supreme Court. Our only choice is to remand this matter for resentencing.

Defendant's conviction is affirmed. The matter is remanded for resentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3172-14T4